IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEROME MADISON, | § | |
| | § | |
| Defendant Below, | § | No. 147, 2015 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below:  Superior Court |
| | § | of the State of Delaware, |
| STATE OF DELAWARE, | § | Cr. ID No. 1312014951 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 6, 2015
Decided: January 28, 2016
Corrected: February 29, 2016

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 29th day of February 2016, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:

(1)    The appellant, Jerome Madison, appeals from his convictions for Rape in the First Degree, Attempted Rape in the First Degree, Unlawful Sexual Contact in the First Degree, Home Invasion, Possession of a Deadly Weapon During the Commission of a Felony, two counts of Kidnapping in the First Degree, Assault in the Second Degree, Assault in the Third Degree, and two counts of Terroristic Threatening.  Madison was sentenced to sixty years of Level V

incarceration, suspended after forty-two years for decreasing levels of supervision. This is Madison's direct appeal.[1]

(2)     The trial record reflects that in early December 2013 Madison's ex-girlfriend, A.T., obtained a protection from abuse ("PFA") order prohibiting Madison from entering her house. Around 1 a.m. on December 24, 2013, A.T.'s friend, E.C., came to A.T's house with a bottle of vodka. Madison had previously warned E.C. to stay away from A.T. While A.T. and E.C. were making out in A.T.'s bedroom, Madison burst through the bedroom door.

(3)     A.T. and E.C. testified that Madison was carrying two knives and threatened to kill A.T. They also testified that Madison claimed to have a gun. Madison punched, kicked, and cut A.T. Madison also punched and cut E.C.

(4)     Madison forced A.T. to perform oral sex on E.C. and then ordered E.C. to perform oral sex upon A.T. There was conflicting testimony as to whether E.C. performed oral sex upon A.T. or pretended to do so. Madison ordered E.C., who was bleeding, to clean himself up and lock himself in the bathroom. While E.C. was in the bathroom, Madison fondled A.T. Madison then told E.C. to come out of the bathroom. Before leaving, Madison threatened to hurt the victims and their families if they contacted the police.

---

[1] Madison was represented by counsel at trial, but waived his right to counsel on appeal and was permitted to represent himself.

2

(5)     After Madison left, E.C. went to his house.  A.T. arranged for a friend to come over and look after her children.  A.T. then picked up E.C. and they went to the hospital for treatment.  Both victims were interviewed by the police at the hospital.

(6)     At trial, Madison admitted to violating the PFA order and hitting E.C. and A.T.  Madison denied that he threatened A.T. and E.C. with knives, forced A.T. and E.C. to have oral sex, or fondled A.T.  The Superior Court found Madison guilty of Rape in the First Degree, Attempted Rape in the First Degree as a lesser included offense of Rape in the First Degree, Unlawful Sexual Contact in the First Degree, Home Invasion, Possession of a Deadly Weapon During the Commission of a Felony, two counts of Kidnapping in the First Degree, Assault in the Second Degree, Assault in the Third Degree, and two counts of Terroristic Threatening.

(7)     After the Superior Court's verdict, Madison's counsel filed a motion to withdraw, which the Superior Court denied.  Madison filed *pro se* motions to dismiss his counsel, recuse the Superior Court judge who presided over the trial, participate with his counsel in his defense, and vacate the judgment or enter a judgment of acquittal based upon the Superior Court judge's failure to recuse himself.  The Superior Court granted Madison's motion to participate in his defense in order to resolve Madison's *pro se* motions.  The Superior Court denied

3

the rest of Madison's *pro se* motions. Madison was subsequently sentenced to sixty years of Level V incarceration, suspended after forty-two years for decreasing levels of supervision.

(8)   On appeal, Madison first argues that the Superior Court judge who presided over the trial erred in failing to recuse himself because he was a former prosecutor who had previously supervised the prosecutor in Madison's case. This claim is without merit.

(9)   When deciding whether to recuse himself, a judge engages in a two-part analysis. First, the judge must be satisfied, as a matter of subjective belief, that he can hear the matter free of bias or prejudice.[2] Second, even if the judge believes he is free of bias or prejudice, he must objectively consider whether the circumstances require recusal because there is an appearance of bias sufficient to cast doubt on the judge's impartiality.[3] On appeal, we review the subjective analysis for abuse of discretion and the objective analysis *de novo*.[4]

(10)   In applying the two-part analysis for recusal, the Superior Court judge noted that: (i) he had not presided over any matters in which the State of Delaware was a party (and therefore the Department of Justice was counsel for the State) for one year after he became a Superior Court judge in January 2013; (ii) he did not

---

[2] *Los v. Los*, 595 A.2d 381, 384-85 (Del. 1991).
[3] *Id.* at 385.
[4] *Fritzinger v. State*, 10 A.3d 603, 611 (Del. 2010).

4

have any involvement in Madison's case before he became a judge because the crimes were not committed until December 2013; and (iii) he had not directly supervised the trial prosecutor since 2005 and had not indirectly supervised the trial prosecutor since 2008. The Superior Court judge concluded, as a matter of subjective belief, that he could and did hear the matter free of bias or prejudice and that an objective observer would not question his impartiality. Under the circumstances, we do not discern any abuse of discretion in the Superior Court's subjective analysis nor, after *de novo* review, do we discern any appearance of bias sufficient to cast doubt on the Superior Court judge's impartiality. We also reject Madison's contention that the Superior Court judge had to disclose his previous supervision of the prosecutor *sua sponte* during Madison's waiver of his right to a jury trial.

(11) Madison next contends that his waiver of a jury trial was defective because his counsel filed a motion to withdraw several months before the waiver colloquy stating, among other things, that he believed Madison intended to suborn or commit perjury. This claim is without merit.

(12) The record reflects that the Superior Court accepted Madison's waiver of his right to a jury trial after engaging in a colloquy with Madison that was consistent with the form of waiver colloquy we endorsed in *Davis v. State*[5] and

[5] 809 A.2d 565, 571-72 (Del. 2002).

5

reviewing the waiver of jury trial form signed by Madison and counsel. At the time of this waiver, Madison knew that his counsel had filed a motion to withdraw referring to his belief that Madison intended to suborn or commit perjury. That motion was heard and denied by a different Superior Court judge than the judge who accepted Madison's waiver of his right to a jury trial and presided over his trial. The record also reflects that Madison wanted a different Superior Court judge than the judge who denied his counsel's motion to withdraw to preside over his trial, which is exactly what happened. Under these circumstances, the Superior Court did not err in determining that Madison's waiver of his right to a jury trial was knowing and voluntary.

(13) Madison next claims that the State violated Superior Court Criminal Rule 16 and *Brady v. Maryland*[6] by suppressing exculpatory results of DNA testing on swabs taken from the victims' bodies and by failing to identify an expert witness who testified at trial. There claims were not raised below and are subject to plain error review.[7] There is no plain error here.

(14) In its March 19, 2014 Superior Court Criminal Rule 16 disclosures, the State indicated that DNA was pending. At trial, Detective DiSabatino testified that no DNA testing was performed. The State confirmed in its closing arguments that no evidence was sent for DNA testing. The State is not required to test

---

[6] 373 U.S. 83 (1963).
[7] Supr. Ct. R. 8.

6

physical evidence seized by the police.[8] Madison's claim that the State suppressed exculpatory results of DNA testing is without merit.

(15) As to the identification of expert witnesses, the State indicated in the March 19, 2014 disclosures that it intended to call Sexual Assault Nurse Examiners ("SANE") Steaphine Taggart and Anita Symonds as experts in medical diagnosis and treatment. The disclosures stated that Taggert and Symonds would testify consistently with the enclosed medical records and offer expert opinions that the victims' injuries or lack thereof were consistent with their versions of the sexual assaults. At trial, the State called Symonds, the SANE who treated and collected evidence from E.C., but did not call Taggert. Instead, the State called Oldham, the SANE who treated and collected evidence from A.T. Madison did not object to Oldham testifying and has not identified any prejudice he suffered as a result of Oldham testifying instead of Taggert. Madison's claim regarding the identification of Oldham as an expert witness does not constitute plain error.[9]

(16) Madison next contends that the State violated Superior Court Criminal Rule 26.2 and his constitutional right to confront witnesses by failing to produce statements of the victims and a typed report of Detective DiSabatino, who

---

[8] *Ruffin v. State*, 2015 WL 7890052, at *11 (Del. Dec. 3, 2015).
[9] *Cf. Bacon v. State*, 1993 WL 433528, at *4 (Del. Oct. 15, 1993) (finding no reversible error where defendant objected at trial to State calling doctors who treated victims instead of doctor identified under Superior Court Criminal Rule 16(a)(1)(e)).

7

interviewed A.T. and was the chief investigating officer. This claim was not raised below and is subject to plain error review.[10] There is no plain error here.

(17) Superior Court Criminal Rule 26.2 provides that after a witness other than the defendant has testified on direct examination, the Superior Court shall, upon the motion of the party who did not call the witness, order the party who called the witness to produce any statement of the witness that is in their possession and that relates to the subject matter of the witness' testimony. Madison's counsel did not move for the State to produce statements of the victims after their direct examinations by the State. The record reflects that several months before trial the State produced, among other things, the report of Officer Drake, who interviewed A.T. before Detective DiSabatino, the report of Detective Breslin, who interviewed E.C., and a cd with an interview of at least one of the victims. The cross-examinations and closing argument of Madison's counsel reflect that he had access to statements made by the victims because he emphasized that they testified at trial about comments Madison made that did not appear in any of their previous statements to the police or hospital staff.

(18) As to Detective DiSabatino's typed report, the trial transcript reflects that Madison's counsel had Detective DiSabatino's handwritten notes during his first cross-examination of Detective DiSabatino, but did not have a copy of a typed

---

[10] Supr. Ct. R. 8.

8

report prepared by Detective DiSabatino. It was agreed that the State would provide a copy of the report during the evening recess and that Detective DiSabatino would be available for additional cross-examination the next day. The next day Madison's counsel stated that he had received a copy of Detective DiSabatino's report and further cross-examined Detective DiSabatino about statements A.T. made to him. Under these circumstances, we find no plain error relating to the State's production of the victim's statements or Detective DiSabatino's typed report.

(19) Madison next claims that his absence from the courtroom during his counsel's resumed cross-examination of Detective DiSabatino on September 25, 2014 violated Superior Court Criminal Rule 43 and his constitutional right to be present at trial. Madison did raise this claim below so we review for plain error.[11] The record does not support this claim. There is no indication in the trial transcript that the trial started on September 25, 2014 before Madison entered the courtroom or that Madison entered the courtroom after Detective DiSabatino testified.

(20) Madison next contends that the Superior Court's verdict failed to address Madison's state of mind or missing evidence adequately. In a bench trial, the Superior Court "shall make a general finding and shall in addition, *on request*

---

[11] Supr. Ct. R. 8.

9

*made before the general finding*, find the facts specifically."[12] Neither party requested that the Superior Court make specific findings of fact. "It is well established that, under Rule 23(c) if neither party requests specific findings, the judge has the discretion to render a general verdict without any findings or to make specific findings on his own motion."[13] The Superior Court therefore did not err in rendering a general verdict without any factual findings.

(21) When the Superior Court renders a general verdict without factual findings, we resolve all factual questions in favor of the Superior Court's findings if there is sufficient evidence to support those findings.[14] "As long as there are facts in the record to support the general verdict, under this standard, our deference is nearly absolute."[15] The facts in this case are sufficient to support the Superior Court's verdict.

(22) Finally, Madison claims that the Superior Court judge violated Rule 2.14 of the Judges' Code of Judicial Conduct because he did not take any action after Madison's counsel commented that his wife believed he needed hearing aids. Rule 2.14 of the Judges' Code of Judicial Conduct provides that a judge who has "a reasonable belief that the performance of a lawyer or another judge is impaired by drugs or alcohol, or by a mental, emotional, or physical condition, should take

---

[12] Super. Ct. Crim. R. 23(c) (emphasis added).
[13] *Cruz v. State*, 12 A.3d 1132, 1135 (Del. 2011).
[14] *Id.*
[15] *Id.*

10

appropriate action, which may include a confidential referral to a lawyer or judicial assistance program." At one point during the trial, Madison's counsel did not hear the Superior Court judge's question regarding whether a witness could be excused and the judge had to repeat the question. Madison's counsel joked that his wife said he needed hearing aids and that he should probably look into her advice. This passing comment did not require the Superior Court to take any action and does not constitute reversible error.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

_____
Justice

11